IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

_____

EDWARD T. LAIOS
     PO Box 10500
     Washington DC 20020
               Plaintiff


     - Personally and on behalf of -


BRIGHTSEAT DEVELOPMENT ASSOCIATES LLC
     Post Office Box 609
     Upper Marlboro, MD 20773
               Plaintiff
     v.

MTM BUILDER/DEVELOPER, INC.
               Defendant
     Serve:

          The Corporation Trust, Inc., Reg. Agent     **Case No.  8:13-cv-02953**
          351 West Camden Street
          Baltimore MD 21201
          - and -


MOREHOUSE REAL ESTATE INVESTMENTS, LLC
               Defendant
     Serve:

          AAA Corporate Services, Inc, Reg. Agent
          1620 Central Ave., Ste. 202
          Cheyenne, WY 82001 USA
          - and-


DEAN F. MOREHOUSE
     287 Regatta Drive
     Jupiter FL 33477
               Defendant

_____

## COMPLAINT

Now comes Plaintiff EDWARD T. LAIOS, personally, and on behalf of BRIGHTSEAT

DEVELOPMENT ASSOCIATES LLC, and for their Complaint herein states and alleges as

follows:

1.      This personal and derivative action arises from the self-dealing, fraudulent conduct of a limited liability company member and manager.

2.      As explained in greater detail below, Defendant Dean F. Morehouse ("Mr. Morehouse"), on his own and through entities owned and controlled by him, abused his authority over Brightseat Development Associates LLC (the "Company") to surreptitiously enrich himself at the expense of the Company and Plaintiff Edward T. Laios ("Mr. Laios").  Further, in order to conceal his malfeasance, Mr. Morehouse, individually and through his entities (and with the assistance of the Company's attorneys), improperly refused Mr. Laios's reasonable requests for information and access to the Company's records.

3.       Mr. Laios, on his own behalf and on behalf of the Company, asserts claims against various Defendants for breach of contract, breaches of various fiduciary duties, fraud, and conversion and seeks an accounting.

**PARTIES**

4.      The Company is a limited liability company formed under the laws of Maryland and having its principal place of business in the State of Maryland.  The Company has only one tangible asset, a parcel of unimproved real property located in Prince George's County, Maryland (the "Property").  The Company has virtually no business operations.  Its only operations and only income derive from the fact that the Property is operated several times a year as an unimproved parking lot for patrons of events held at FedEx Field.

5.      Mr. Laios is a resident of the United States Virgin Islands and holds (and has at all times relevant to this Complaint held) a 47.5% Member interest in the Company.

6.      Mr. Morehouse is, upon information and belief, a resident of the State of Florida. He controls, either in his own name or in the name of Defendant Morehouse Real Estate Investments, LLC ("MREI"), a 47.5% Member interest in the Company.

7.      MREI is a limited liability company that was formed under the laws of Wyoming and, upon information and belief, does not have its principal place of business in Maryland or the United States Virgin Islands.  Upon information and belief, Mr. Morehouse operates MREI as his personal *alter ego*, using its funds interchangeably with his personal funds and operating MREI for his personal needs and benefits.

8.      MREI purports to hold a 47.5% Member interest in the Company.  Upon information and belief, Mr. Morehouse purported to transfer his interest in the Company to MREI, without consideration, with a backdated effective date of 2009.  In doing so, however, Mr. Morehouse did not comply with the requirements of the Company's Operating Agreement dated "August ___2003" [sic] (the "Operating Agreement") or gain the other members' prior consent as required by the Operating Agreement.

9.      Whether through his personal ownership of the Company, through his ownership and control of the MTM Builder/Developer, Inc. ("MTM" or the "Manager"), or through his ownership of MREI (the putative transferee of his interest in the Company), Mr. Morehouse has continued to control and benefit personally from a direct or indirect ownership interest in the Company.  The Member interests that Mr. Morehouse purportedly transferred to MREI are sometimes collectively referred to herein as the "Morehouse Interests."

10.      MTM is a corporation organized under the laws of Virginia and having its principal place of business in the Commonwealth of Virginia.

11.     Upon information and belief, Mr. Morehouse is the sole owner of MTM, either directly or through another entity that he also controls.  MTM is controlled by Mr. Morehouse, who also serves as its President.

12.     MTM is and has at all times relevant to this Complaint been the Manager of the Company and has exercised sole control and dominion over its books, records, accounts, and financial disbursements.

### JURISDICTION, VENUE, STANDING, & PREREQUISITES TO LAWSUIT

13.     This Court has jurisdiction over the subject matter of this dispute pursuant to 28 USC § 1332 (Diversity of Citizenship).

14.     Venue in this jurisdiction is appropriate pursuant to 28 USC § 1391(b)(2).

15.     This action is brought on behalf of Mr. Laios, personally, in his capacity as a Member of the Company holding a 47.5% interest, and on behalf of the Company pursuant to Md. Code [Corps. & Assns.] § 4A-801(b).  Consistent with the standing-related requirements of Md. Code [Corps. & Assns.] § 4A-802, Mr. Laios (i) is currently a Member of the Company, and (ii) was a Member of the Company as of the date of the actions/inactions complained of herein.

16.     In compliance with Md. Code [Corps. & Assns.] § 4A-801(b), Mr. Laios made a formal, September 9, 2013 demand on Mr. Morehouse (who represented the Company's Manager) that the Manager pursue claims set forth herein on behalf of the Company.  Mr. Morehouse, on behalf of the Company and the Manager, rejected and refused that demand in writing on September 12, 2013.

## FACTUAL BACKGROUND

**I.   The Manager Pays Itself Unauthorized Disbursements from Company Funds**

    **A.   Mr. Morehouse Effectively Holds Proposed Sale Hostage in Exchange for "Ransom" to be Paid to the Manager**

17.    Pursuant to Section 5.11 of the Operating Agreement, the payment of Management Fees to the Manager must be approved by a majority interest of the Members.

18.    At a meeting of the Members on March 17, 2011, Mr. Morehouse stated that he would not execute a contract for the sale of the Property unless the Members agreed to pay the Manager (which he directly or indirectly owned and controlled) a fee of $5,000 per month for so long as the contract for potential sale was extant.

19.    Concerned that Mr. Morehouse's threatened inaction would cause the Company to lose an important business opportunity, Mr. Laios consented to a limited period of payment of the fee for the specific purpose of engaging, and negotiating the potential acquisition of the Company's property by, a potential buyer by the name of Oxford Properties LLC ("Oxford").

20.    By the explicit terms of the resolution, the authority of the Manager to draw management fees expired with the expiration of renewals and extensions of the potential agreement with Oxford.  Accordingly, when that option agreement expired in August 2011, the Manager's right to draw fees expired as well.  Neither the contract with Oxford nor the right to charge fees was ever renewed or reinstated.

21.    After the fee approval expired of its own terms in August 2011, however, the Manager again demanded compensation from the Company, and on March 6, 2012 Mr. Morehouse presented to the Members the Manager's demand that the previous $5,000.00 per month in compensation be reinstated, retroactive to September 2011.  Only Mr. Morehouse himself, purporting to act on behalf of MREI (the Morehouse-owned company to whom Mr.

Morehouse had purportedly transferred his ownership interest in the Company), voted in favor of paying this money to his management company, MTM.   The Members rejected the Manager's demand.

**B.    Secret Disbursements Discovered**

22.    Mr. Morehouse was well aware that Mr. Laios would not approve further management fees unless and until the Company's finances justified such payments.  Moreover, Mr. Morehouse knew that Mr. Laios would contribute additional capital only as needed to fund the Company's legitimate business operations, and not to pay MTM more management fees.

23.    Thus, Mr. Morehouse resorted to deceit.  On April 25, 2013, in order to fund additional, unauthorized management fees for the Manager, he proposed a facially "legitimate" capital call in the amount of $847,076.91.  (This amount was later increased to $1.1 million, purportedly to fund then-current invoices and future work at the Property.)

24.    According to Mr. Morehouse at the time, the capital call was needed to address "1) Invoices paid out of Brightseat Development Associates, LLC; 2)  Remaining contract amounts due for site work; 3) Future Cost Estimates."  Later, on July 31, 2013, Mr. Morehouse justified the proposal on the grounds that "the company need[ed] funds to operate and fulfill its obligations under the contract to pursue conceptualized site plan, update stormwater management to keep it grandfathered, and obtain a preliminary plan approval."

25.    In response to the April 2013 "capital call" proposal, Mr. Laios requested access to the Company's books and records and undertook independent due diligence to ensure that the capital call was properly supported by the Company's needs.  Mr. Morehouse, on behalf of the Manager, repeatedly denied Mr. Laios that access.

26.    Mr. Morehouse did, however, provide another Member with limited access to some of the company bank statements and what Mr. Morehouse claimed to be a summary of

Company transactions, on or about May 29, 2013.   That Member shared some of those documents – one of which Mr. Morehouse also had sent directly to Mr. Laios – on June 2, 2013.

27.     While reviewing these limited financial records, Mr. Laios first learned that the Manager, in direct violation of the Operating Agreement, had secretly been using Company funds to pay itself substantial "Management Fees." The records revealed, in fact, that the Manager had received monthly fees of $5,000 from September 2011 through at least July 2013. As of July 2013, those fees totaled $90,000.00.

28.     In addition, the records revealed that the Manager had paid itself an additional $53,885.51 in "Development Fees" from Company funds.  Under Section 5.13 of the Operating Agreement, such fees must be "not excessive and negotiated in good faith."   Since Mr. Morehouse had concealed the payments from other Members entirely, however, those fees obviously had not been "negotiated" – in good faith or otherwise.

## II.     Morehouse Falsely Claims to Have Loaned Money to the Company

29.     Since the previous capital contribution funded by Mr. Laios was supposed to pay only the past due real property tax burdens for the Property, a question immediately arose as to where the Manager had found funds to divert to itself as "Management Fees" and "Development Fees" in violation of the Operating Agreement.

30.     Morehouse provided an answer, but alas, it was a false and fraudulent one.

31.     Specifically, in a document entitled "Account QuickReport As of April 30, 2013," given to Mr. Laios on June 3, 2013, Mr. Morehouse falsely and fraudulently claimed to have personally issued the Company an August 28, 2012 "Development Loan" in the amount of $733,610.85.  Mr. Morehouse then made it appear that he had used proceeds from this fictional

loan to pay his company at least $138,885.51 in (unauthorized) management fees without the need to disclose the payments or make a capital call to the Members.[1]

32.     Thereafter, on September 12, 2013, Mr. Morehouse falsely and fraudulently stated in writing that the $733,610.85 represented "[f]unding by Morehouse, interest of a previous capital call, please be advised that in addition to getting a loan from a friend, I cashed in an insurance policy to pay off the tax lien on the property."

33.     On or about September 19, 2013, Mr. Laios learned for the first time that Mr. Morehouse had never made such a loan to the Company.  Rather, Mr. Morehouse had altered the Company's books and records to make it appear as if the Company owed him, personally, almost three quarters of a million dollars.  Simultaneously, as further alleged below, Mr. Morehouse continued his pattern of refusing Mr. Laios's requests to inspect Company records and access bank statements and other materials that might have uncovered the fraud and deceit.

### III.     Mr. Morehouse Secretly Obtains Mortgage on the Property in Order to Finance Unauthorized Payments from the Company to MTM

34.     After receiving the most recent capital call, Mr. Laios, through his personal counsel, undertook an independent review of the land records of Prince George's County.  That review yielded a stunning, June 2013 discovery:  that on or about August 23, 2012, Mr. Morehouse – acting through Company counsel Garth Beall ("Mr. Beall") – had secretly caused an $850,000.00 deed of trust to be placed on the Company's otherwise unencumbered Property.[2]

---

[1] Significantly, in the putative capital call of April 25, 2013 (and in subsequent demands for payment of same dated July 1, 2013 and July 31, 2013), Mr. Morehouse made no reference to a loan to the Company that would be repaid from proceeds of a capital call.

[2] In the putative capital call of April 25, 2013 (and in subsequent demands for payment of same dated July 1, 2013 and July 31, 2013), Morehouse had not disclosed to the Members the existence of a third-party security interest against the Property or any underlying loan.

35.     Mr. Laios, through his counsel, immediately made demands – on Mr. Beall, on Company attorney Neil Goldman ("Mr. Goldman"), and on Mr. Morehouse – that he be provided copies of Company books and records related to the secret Deed of Trust and accompanying loan.  Mr. Beall, citing the need for Mr. Morehouse's approval, expressly refused the demand, whereas  Mr. Goldman and Mr. Morehouse simply did not respond.  Despite repeated written demands to the Manager and Company counsel spanning over three (3) months, Messrs. Beall, Goldman, and Morehouse all refused to disclose any aspect of the secret $850,000.00 loan and refused to provide copies of any documentation related to that loan.

36.     The written demand for explanation, disclosure, and documentation was repeated at least ten times between June 2, 2013 and September 17 2013 but was ignored by Mr. Morehouse and Company counsel.

37.     Mr. Goldman, under threat of litigation, finally emailed copies of the loan documents on September 19, 2013.  However, he and Mr. Morehouse continued to stonewall Mr. Laios' attempts to access Company books and records that might shed additional light as to (i) what the Manager has actually done with Company funds, and (ii) what debts and encumbrances that Mr. Morehouse has placed on Company property for the Manager's financial gain.

**IV.     Morehouse Diverts Almost $100,000.00 of Company Money to His Personal Account**

38.     The limited loan documents provided on September 19, 2013 revealed yet another improper conversion of Company funds by Mr. Morehouse and/or the Manager.  In particular, those documents indicated, and Mr. Goldman subsequently confirmed, that Mr. Morehouse caused almost $100,000.00 of the $850,000.00 secret loan proceeds to be diverted to his personal use and control.

39.     Upon information and belief, Mr. Beall, in his capacity as Company attorney and in association with the secret loan, had prepared a "Settlement Statement" that falsely indicated that the funds were to be used for "Real Estate Taxes 2011-2013."   In truth, those taxes had already been paid, and the falsely-identified funds were instead misdirected to Mr. Morehouse's personal control by Mr. Beall's law firm.   Despite these clearly false representations, Mr. Morehouse personally executed, verified, and attested to the accuracy of the false "Settlement Statement" prepared by Mr. Beall.

40.     At the time of the diversion, no monies were either directly or indirectly owed to Mr. Morehouse.   That diversion, in fact, amounts to fraud, conversion, and violation of multiple fiduciary duties owed by Mr. Morehouse to the Company and its Members.

41.     Further, Mr. Morehouse, through his actions and inactions (with the assistance of Mr. Goldman and Mr. Beall, the Company attorneys), perpetrated a pattern of fraud and concealment to prevent Mr. Laios from learning about, receiving documents related to, and remedying (i) the conversion of almost $100,000.00 in secretly-borrowed Company funds to Mr. Morehouse personally, (ii) the payment of secretly-borrowed Company funds to Manager MTM for "Management fees" to which it was not legally entitled, (iii) the payment of secretly-borrowed Company funds to Manager MTM as "Development fees" to which it was not legally entitled, and (iv) the false and fraudulent claim by Mr. Morehouse that he had personally lent the Company almost three quarters of a million dollars.

**V.     Morehouse Causes Tax Lien to be Sold at Tax Sale and Uses that Pretense to Fraudulently Induce Laios into Contributing Monies**

42.     In the summer of 2012, real property taxes on the Property remained unpaid and past due, and Mr. Morehouse, on behalf of MREI, refused to make a capital call or contribution for the purpose of paying those taxes.   Specifically, Mr. Morehouse stated that he would not

cause MREI to make any capital call payment unless and until Mr. Laios agreed to retroactively reinstate the $5,000.00 monthly fee to MTM.

43.     Mr. Laios declined Mr. Morehouse's demand, so no capital call was made or funded.  Consequently, the taxes remained in default and, on May 30, 2013, were sold at tax sale.

44.     Subsequently, Mr. Morehouse claimed to have made a personal, August 30, 2012 loan to the Company to redeem the unpaid real property taxes and bring the taxes current.  In an email to Mr. Laios of that date, Mr. Morehouse stated as follows:  "Please send your portion of the capital call/loan in the amount of $43,408.33."  Such funds, according to Mr. Morehouse, would be matched by the Morehouse Interests and used to repay the alleged loan.

45.     In connection with Mr. Morehouse's request, Mr. Goldman sent Mr. Laios documentation that purported to establish that the alleged personal loan from Morehouse (i) was legitimate, (ii) had been used to pay the delinquent taxes, and (iii) would be repaid in full from the capital call proceeds.  Further, by email dated October 12, 2012, Mr. Goldman stated as follows:  "Please note that per the 9-18-2012 e-mail, Edward's share of the capital call is $49,340.18, and MREI's share is $56,840.18.  Dean [Morehouse] advises that MREI will fund its share directly, and not get involved with taking credits.  In this way, the books will be clean.  It is the manager's intent to pay off the notes upon receipt of the capital calls from the members."

46.     Based on the representations of Mr. Morehouse and Mr. Goldman, Mr. Laios agreed to contributing his pro-rata share of a special capital call for the sole purpose of repaying the loan that Morehouse had allegedly made to the Company for payment of past-due real property taxes.

47.     On October 12, 2012, Mr. Laios tendered his contribution of $49,340.03 through his counsel's law firm escrow check #1159.  That check was delivered to Mr. Goldman with this

specific instruction:   "You are instructed not to release or negotiate this check until the referenced $56,840.18 [from Morehouse Interests] has been tendered and shall be simultaneously deposited into the Company bank account."

48.     Mr. Goldman apparently failed to heed the condition precedent to Mr. Laios' contribution, and he failed to disclose that failure to Mr. Laios or his counsel.  Instead, Mr. Goldman acted in concert with Mr. Morehouse to deceive Mr. Laios into tendering and contributing the $49,340.03.   The "Account QuickReport As of April 30, 2013," recently obtained by Mr. Laios, shows Mr. Laios' deposit of approximately that date but reveals a ledger entry marked "deposit: Dean Morehouse:VOID" – apparently indicating that the required matching capital call from the Morehouse Interests was never made.

49.     By email to Mr. Goldman dated June 2, 2013, counsel for Mr. Laios stated as follows:  "Please forward to me whatever documentation you received from Mr. Morehouse that induced you to release the escrowed funds, since they were tendered to your control on the explicit representation that a matching deposit would be received and documented to you from the other member prior to or simultaneously with your release of that check."   Despite that request, and repeated subsequent requests to Mr. Goldman, no such documentation or other response has ever been received.

50.     Additionally, as noted below, Mr. Morehouse has continually and consistently refused to permit Mr. Laios to inspect Company books and records, and thereby perpetuates to this day the behavior of the Manager and Company counsel in concealing this and other relevant information.

51.     This behavior by Morehouse, both individually and in his capacity controlling the Manager, constitutes, *inter alia,* fraudulent inducement to Mr. Laios to tender monies upon the

false and fraudulent representation that Morehouse had tendered a matching contribution.  As explained in greater detail *infra*, the conduct also amounted to violations of various fiduciary duties.

52.     Furthermore, as set forth in more detail elsewhere in this Complaint, Mr. Morehouse – unbeknownst to Mr. Laios – already had been repaid the monies he claims to have advanced for taxes, and in fact had personally taken an additional $100,000.00 in Company funds to which he had no claim whatsoever.  Rather than use the funds for the specific purpose claimed and tendered, Mr. Morehouse caused Mr. Laios' money to be used to pay his management company, MTM, significant Company monies to which it was not entitled.

53.     But for the false representations of Mr. Morehouse and the Manager, as communicated through Mr. Goldman, Mr. Laios would not have tendered the capital call contribution.

**V.     The Manager Conceals and Denies Access to Company Books and Records**

54.     Mr. Laios, as a Member of the Company, is statutorily entitled to access to books and records of the Company pursuant to Md. Code [Corps. & Assns.] § 4A 101(o)(1) and contractually entitled to such access pursuant to Section 13.02 of the Company's Operating Agreement.

55.     Mr. Laios, through counsel, has made written demand for access to and inspection of the Company's books and records during regular business hours on at least eleven (11) different occasions: June 2, June 3, July 2, July 31, August 15, September 9, September 13, September 17, September 18, September 25, and September 27, 2013.  At first, these requests were ignored entirely.

56.     In response to a formal certified letter, Mr. Morehouse finally responded on September 12, 2013 at 4:58 pm, when he stated the following via email:  "We will not produce any records, but we will make available any company records after Monday, 9/16/13, after tax season."   Morehouse conditioned this statement, stating that he would permit inspection only if Mr. Laios paid the Manager a fee for making those records available.

57.     There is no basis in law or the Operating Agreement for conditioning access to Company books and records on payment to the Manager or anyone else.

58.     Counsel for Mr. Laios immediately responded to Mr. Morehouse's communication by requesting the location at which Morehouse was maintaining the books and records and requesting a date on which they could be inspected.

59.     Mr. Morehouse then replied with yet another inapposite and evasive refusal to cooperate, stating (via email at 5:13 p.m. September 12, 2013) as follows:  "Mr. Edward Laios does not control Brightseat Development Associates, LLC.  He surrendered that when he signed the LLC, but he has tried to assert his control on many occasions."   In truth, however, Mr. Laios's holding and voting rights under the Operating Agreement are equal to those of the Morehouse Interests.

60.     Mr. Morehouse then contended that the files were scattered in various locations, including someone's basement, and refused to identify their location or arrange a time for inspection.

61.     Mr. Goldman, as counsel for the Company, subsequently promised in writing on three (3) instances to arrange for inspection.   As each date came and went, however, he failed to disclose where the Manager was concealing the books and records and failed to forward any of

the promised documents.  No further response was received, and as of this date, no inspection has been permitted.

62.     Mr. Laios respectfully contends that he is entitled to an Order of this Court requiring the Manager to make available for inspection and copying all books and records of the Company, including but not limited to the following:  bank statements, ledgers, checks, invoices, contracts, minutes, operating agreement, correspondence, Company litigation files, loan documents, deeds of trust, deeds, tax bills, tax filings and returns, records of member contributions, balance sheets and operating statements.

63.     Mr. Laios respectfully contends that he is entitled to an Order of this Court that such inspection be permitted by the Manager without redaction, hindrance, delay or cost to Mr. Laios, at a time and location certain under penalty of further sanction.

64.     Mr. Laios respectfully contends that he is entitled to his costs and attorneys' fees reasonably expended in pursuing and enforcing his statutory and contractual rights to such access, which have been denied by the Manager in bad faith as part of Mr. Morehouse's attempts to conceal his fraudulent behavior and falsification of Company records (including but not limited to the phantom personal loan he claimed to have made to the Company, unauthorized payments to his company MTM Builder/Developer from Company funds, and his personal diversion of almost $100,000 in Company cash to his own account).

**COUNT I**
**BREACH OF CONTRACT**
**(Laios and Company v. MTM)**

65.     Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

66.     The actions and inactions of MTM as set forth above, including but not limited to the payment to itself of Management Fees and Development Fees not authorized by the Operating Agreement, were in violation of MTM's contractual duty to the Company under its Operating Agreement and in breach of its contractual obligations.

67.     Plaintiffs have been harmed by these actions and inactions in an amount to be determined at trial, but not less than $250,000.00.

## COUNT II
## BREACH OF FIDUCIARY DUTY OF LOYALTY
### (Laios and Company v. MTM, Morehouse, and MREI)

68.     Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

69.     At all times relevant to this Complaint, MTM was a managerial agent of the Company.

70.     At all times relevant to this Complaint, Mr. Morehouse was a Member of the Company or the controlling principal of a Member of the Company.

71.     At all times relevant to this Complaint, Mr. Morehouse was a managerial agent of the Company.

72.     At all times relevant to this Complaint, MREI was an actual or purported Member of the Company.

73.     In their respective capacities, MTM, Mr. Morehouse, and MREI each owed the Company and Mr. Laios a duty of loyalty.  Pursuant to that duty, each of those Defendants was prohibited from dealing with the Company as, or on behalf of, a party having an interest adverse to the Company.

74.     By their actions and inactions as set forth above, Defendants breached this fiduciary duty, *inter alia*, by (a) disbursing to the Manager monies that had not been authorized and in fact had been specifically rejected by vote of the Members; (b) transferring to Mr. Morehouse, personally, almost $100,000.00 in Company funds to which Morehouse had no right or interest; and (c) creating and distributing to Mr. Laios falsified financial information about the Company and denying repeated requests for inspection of the Company's books and records.

75.     The actions in violation of the duty of loyalty to the Company and Mr. Laios were accomplished by Mr. Morehouse and MREI directly and by the Manager through the actions and with the consent and knowledge of Mr. Morehouse and MREI.

76.     Plaintiffs have been harmed by the breaches of this fiduciary duty in an amount to be determined at trial, but not less than $250,000.00.  Plaintiffs are further entitled to punitive and exemplary damages in an amount to be determined at trial, but not less than $1,000,000.00.

77.     In addition, Plaintiffs are entitled to an Order of this Court requiring Defendants, jointly and severally, to repay to the Company all funds wrongfully diverted from Company accounts.

<u>COUNT III</u>
**BREACH OF FIDUCIARY DUTY OF CARE**
**(Laios and Company v. MTM, Morehouse, and MREI)**

78.     Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

79.     At all times relevant to this Complaint, MTM was a managerial agent of the Company.

80.     At all times relevant to this Complaint, Mr. Morehouse was a Member of the Company or the controlling principal of a Member of the Company.

81.    At all times relevant to this Complaint, Mr. Morehouse was a managerial agent of the Company.

82.    At all times relevant to this Complaint, MREI was an actual or purported Member of the Company.

83.    In their respective capacities, MTM, Mr. Morehouse, and MREI each owed the Company and Mr. Laios a duty of care.  Pursuant to that duty, each of those Defendants was required to exercise reasonable care, competence, diligence, and judgment with regard to the management and activities of the Company.  Conversely, each of those Defendants was prohibited from engaging in grossly negligent or reckless conduct, intentional misconduct, or knowing violation of the law.

84.    By their actions and inactions as set forth above, Defendants breached this fiduciary duty, *inter alia*, by (a) disbursing to the Manager monies that had not been authorized and in fact had been specifically rejected by vote of the Members; (b) transferring to Mr. Morehouse, personally, almost $100,000.00 in Company funds to which Morehouse had no right or interest; and (c) creating and distributing to Mr. Laios falsified financial information about the Company and denying repeated requests for inspection of the Company's books and records.

85.    The actions in violation of the duty of care to the Company and Mr. Laios were accomplished by Mr. Morehouse and MREI directly and by the Manager through the actions and with the consent and knowledge of Morehouse and MREI.

86.    Plaintiffs have been harmed by the breaches of this fiduciary duty in an amount to be determined at trial, but not less than $250,000.00.  Plaintiffs are further entitled to punitive and exemplary damages in an amount to be determined at trial, but not less than $1,000,000.00.

87.     In addition, Plaintiffs are entitled to an Order of this Court requiring Defendants, jointly and severally, to repay to the Company all funds wrongfully diverted from Company accounts.

## COUNT IV
### BREACH OF FIDUCIARY DUTY OF OBEDIENCE
### (Laios and Company v. MTM, Morehouse, and MREI)

88.     Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

89.     At all times relevant to this Complaint, MTM was a managerial agent of the Company.

90.     At all times relevant to this Complaint, Mr. Morehouse was a Member of the Company or the controlling principal of a Member of the Company.

91.     At all times relevant to this Complaint, Mr. Morehouse was a managerial agent of the Company.

92.     At all times relevant to this Complaint, MREI was an actual or purported Member of the Company.

93.     In their respective capacities, MTM, Mr. Morehouse, and MREI each owed the Company and Mr. Laios a duty of obedience.  This duty required them to act within the scope of authority of the agency relationship.  Specifically, they were required to act reasonably, refrain from conduct likely to damage the Company's enterprise, and act within the express and implied terms of their contracts with the Company.

94.     By their actions and inactions as set forth above, Defendants breached this fiduciary duty, *inter alia*, by (a) disbursing to the Manager monies that had not been authorized and in fact had been specifically rejected by vote of the Members; (b) transferring to Mr.

Morehouse, personally, almost $100,000.00 in Company funds to which Morehouse had no right or interest; and (c) creating and distributing to Mr. Laios falsified financial information about the Company and denying repeated requests for inspection of the Company's books and records.

95.     The actions in violation of the duty of obedience to the Company and Mr. Laios were accomplished by Mr. Morehouse and MREI directly and by the Manager through the actions and with the consent and knowledge of Morehouse and MREI.

96.     Plaintiffs have been harmed by the breaches of this fiduciary duty in an amount to be determined at trial, but not less than $250,000.00.  Plaintiffs are further entitled to punitive and exemplary damages in an amount to be determined at trial, but not less than $1,000,000.00.

97.     In addition, Plaintiffs are entitled to an Order of this Court (a) requiring the Defendants to provide Plaintiffs with full access to company books and records, and (b) requiring Defendants, jointly and severally, to repay to the Company all funds wrongfully diverted from Company accounts.

**COUNT V**
**BREACH OF FIDUCIARY DUTY OF INFORMATION**
**(Laios and Company v. MTM, Morehouse, and MREI)**

98.     Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

99.     At all times relevant to this Complaint, MTM was a managerial agent of the Company.

100.    At all times relevant to this Complaint, Mr. Morehouse was a Member of the Company or the controlling principal of a Member of the Company.

101.    At all times relevant to this Complaint, Mr. Morehouse was a managerial agent of the Company.

102.    At all times relevant to this Complaint, MREI was an actual or purported Member of the Company.

103.    In their respective capacities, MTM, Mr. Morehouse, and MREI each owed the Company and Mr. Laios a duty of information.  This duty required them to use reasonable effort to disclose information to the Mr. Laios that he and the Company would need or want to know.

104.    By their actions and inactions as set forth above, Defendants breached this fiduciary duty, *inter alia*, by (a) concealing information regarding self-dealing activities, (b) creating and distributing to Mr. Laios falsified financial information about the Company, and (c) denying repeated requests for inspection of the Company's books and records.

105.    The actions in violation of the duty of information to the Company and Mr. Laios were accomplished by Mr. Morehouse and MREI directly and by the Manager through the actions and with the consent and knowledge of Morehouse and MREI.

106.    Plaintiffs have been harmed by the breaches of this fiduciary duty in an amount to be determined at trial, but not less than $250,000.00.  Plaintiffs are further entitled to punitive and exemplary damages in an amount to be determined at trial, but not less than $1,000,000.00.

107.    In addition, Plaintiffs are entitled to an Order of this Court (a) requiring the various Defendants to provide Plaintiffs with full access to company books and records, and (b) requiring Mr. Morehouse and MTM to repay to the Company all funds wrongfully diverted from Company accounts.

## COUNT VI
**FRAUD**
**(Laios and Company v. Morehouse and MTM)**

108.    Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

109.     By their actions and inactions as set forth above, including, but not limited to (a) fraudulently misrepresenting that Mr. Morehouse had made a loan to the Company and that the Company owed Mr. Morehouse money, (b) fraudulently concealing the existence of a third-party loan secured by the Company's assets, (c) fraudulently misrepresenting the financial records of the Company, (d) fraudulently misrepresenting that the Morehouse Interests had made a capital contribution to the Company in October 2012, (e) fraudulently diverting Company funds to payment of unauthorized "Management Fees" and "Development Fees," and (f) fraudulently transferring almost $100,000.00 of Company funds to Mr. Morehouse's personal dominion and control and for his person use and enjoyment, Mr. Morehouse and MTM defrauded Mr. Laios and the Company.

110.     These representations were false when made, Mr. Morehouse and MTM knew them to be false or made them with reckless indifference to the truth.  The representations were made with the intention of defrauding Mr. Laios and the Company, and were reasonably relied upon by Mr. Laios and the Company.

111.     Plaintiffs have been harmed by this fraud in an amount to be determined at trial, but not less than $500,000.00.  Plaintiffs are further entitled to punitive and exemplary damages in an amount to be determined at trial, but not less than $1,000,000.00.

<u>COUNT VII</u>
**CONVERSION**
**(Laios and Company v. Morehouse and MTM)**

112.     Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

113.     By their actions as more specifically set forth above, Defendants Morehouse and MTM caused Company funds to be removed from the control and custody of the Company

without authority or legal justification and converted to their own dominion, control, use and enjoyment. At all times relevant, the Company maintained right to possession of the money, the Defendants' conversion by wrongful act was inconsistent with the property rights of the Company, and Defendants intentionally used this money without authority and with intent to acquire it for themselves.

114.     Plaintiffs have been harmed by this conversion in an amount to be determined at trial, but not less than $500,000.00.

**COUNT VIII**
**FRAUDULENT INDUCEMENT**
**(Laios and Company v. Morehouse. MTM and MREI)**

115.     Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

116.     By their actions as set forth above, Defendants Morehouse and MTM, with the aid and assistance of Company counsel Neil Goldman, fraudulently induced Mr. Mr. Laios into contributing additional capital monies to the Company by, *inter alia*, falsely and fraudulently representing that a matching capital contribution by the Morehouse Interests had been made at the same time and that Mr. Laios's new capital contribution would be used for purposes of paying back tax liens on the Property.

117.     These representations were false when made, and Mr. Morehouse, MTM, and MREI knew them to be false or made them with reckless indifference to the truth. The representations were made with the intention of defrauding Mr. Laios and the Company, and were reasonably relied upon by Mr. Laios and the Company.

118.     Mr. Laios has been harmed by this fraudulent inducement in an amount to be determined at trial, but not less than $56,840.18.

## COUNT IX
## ACTION FOR ACCOUNTING
### (Laios v. MTM and Morehouse)

119.    Plaintiffs allege and incorporate by reference the factual allegations set forth above, as if fully set forth herein.

120.    Mr. Laios is entitled to an immediate Order of this Court permitting inspections of the Company's books and records, pursuant to Md. Code [Corps. & Assns.] § 4A 101(o)(1) and Section 13.02 of the Company's Operating Agreement.

121.    Defendants MTM and Morehouse are under an obligation to pay money to Plaintiffs based on facts and records that are known and kept exclusively by the Defendants, with whom there is a fiduciary relationship.

122.    Defendants have denied access to books and records, submitted falsified Company financial records, and prevented accounting in bad faith as part of their scheme to defraud the Company and Mr. Laios.

123.    Plaintiffs are entitled to their reasonable costs and attorneys' fees enforcing their right to access to books and records and to accounting.

### JURY DEMAND

Trial by jury is demanded as to all issues eligible for such trial.

Respectfully submitted,


_____/s/_____
David G. Ross
Federal Bar No. 16287
ROSS LAW FIRM, LLC
1901 Research Blvd.
Suite 300
Rockville MD 20850
Telephone:  (301) 610-7730
Facsimile:  (301) 738-7060
dross@davidrosslaw.com

*Counsel for Plaintiffs*

Dated:  October 7, 2013


*Of Counsel:*
James M. Loots
Law Offices of James M Loots PC
634 G Street SE #200
Washington DC 20003
(202) 536-5650
jloots@lootslaw.com