IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| EDWARD T. LAIOS, *et al.* | * |
| Plaintiffs, | * |
| v. | *   Case No.: GJH-13-2953 |
| MTM BUILDER/DEVELOPER INC., *et al.* | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Edward Laios brought this action personally and on behalf of Brightseat Development Associates, LLC ("Brightseat") against Brightseat's manager, MTM Builder/Developer, Inc. ("MTM") and the manager's owner, Dean Morehouse. Laios[1] includes several counts in the Second Amended Complaint: breach of contract, breach of the fiduciary duty of loyalty, breach of the fiduciary duty of care, breach of the fiduciary duty of obedience, breach of the fiduciary duty of information, fraud, conversion, and fraudulent inducement. *See* ECF No. 45-1. Defendants have filed counterclaims for declaratory judgment and for "breach of contract and of duty of good faith." *See* ECF No. 14. Contending that there is no genuine dispute of material fact that Defendants breached Brightseat's Operating Agreement[2] (the "Operating Agreement") and that he did not, Laios now moves for partial summary judgment on both his breach of contract

---

[1] While Brightseat is also a Plaintiff in this action, Laios has filed suit personally and on behalf of Brightseat and the Court will refer simply to Laios when speaking of Plaintiffs.

[2] The entire name of the agreement is the Operating Agreement of Brightseat Development Associates, LLC A Maryland Limited Liability Company. *See* ECF No. 76-3.

claim and Defendants' breach of contract and duty of good faith counterclaim. *See* ECF No. 76. The Court disagrees with Laios on both issues. For the reasons explained below, Laios' motion is DENIED.

I.  **BACKGROUND**

Brightseat, a Maryland limited liability company, was established in 2003 to develop a parcel of real property in Prince George's County, Maryland. *See* ECF No. 45 at ¶ 4. The LLC members are Laios (47.5 percent interest), Morehouse Real Estate Investments, LLC, which is affiliated with Dean Morehouse (47.5 percent interest), and Gary Laios (5 percent interest).[3] *See id.* at ¶ 14; ECF No. 14 at 13. MTM is Brightseat's manager and is owned and controlled by Morehouse. ECF No. 45 at ¶ 9–11.

The Operating Agreement contains two sections controlling the payment of the manager, MTM. *See* ECF No. 76-3. Section 5.11 provides that "the salaries and other compensation of the Managers shall be fixed from time to time by an affirmative vote of Members holding at least a Majority Interest, and no Manager shall be prevented from receiving that salary because the Manager is also a Member of the Company." *Id.* at 9.[4] Section 5.13 relates to fees paid to the Manager and provides that "the Manager shall be entitled to development fees for managing the development in whole or in part of the Brightseat Road real property, provided such fees are not excessive and are negotiated in good faith. If the Manager performs services of a general contractor or construction manager, the Manager shall be entitled to the usual and customary fees." *Id.* at 9.

---

[3] Gary Laios is Plaintiff Edward Laios' nephew. *See* ECF No. 76-1 at 4.
[4] A majority interest is "one or more Interest of Members which taken together exceed Seventy-Five Percent (75%) of the aggregate of all Member Interests." ECF No. 76-3 at 3.

2

Laios and Morehouse appear to have long held disagreements about MTM's entitlement to compensation or fees. These disagreements, and many others, came to a head in October 2013 when Laios filed suit against MTM and Morehouse, alleging, in part, that MTM breached the Operating Agreement by secretly paying itself management fees of $5,000 per month from Brightseat funds. *See id.* at ¶ 26. Defendants have filed a counterclaim asserting, in part, that Laios breached his duty under the Operating Agreement to compensate MTM as Brightseat's manager and not to block MTM's right to fees. *See* ECF No. 14 at 14, ¶¶ 15–16. Laios has now asked for summary judgment on both his breach of contract claim and Defendants' breach of contract and duty of good faith counterclaim.

## II. STANDARD OF REVIEW

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Importantly, at the summary judgment stage, it is not the Court's function to weigh the evidence but simply to decide if there is a genuine issue for trial. *Id.* at 249. A "genuine" dispute of material fact is one

where the conflicting evidence creates "fair doubt," *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir.2001), such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968).

### III.  DISCUSSION

#### a. Laios' Breach of Contract Count

The first issue Laios raises is whether MTM breached the Operating Agreement by taking at least $5,000 per month in fees from Brightseat.[5] *See* ECF No. 76-1 at 16–17. Laios claims he ceased authorizing the $5,000 monthly fee on October 18, 2011, and again authorized the fee starting March 2014. *See* ECF No. 76-1 at 13 & 76-12. Although Laios does not identify the specific timeframe when MTM took the unauthorized fees, the facts alleged and argument set forth in his Second Amended Complaint and summary judgment motion suggest that he believes the Operating Agreement was breached between October 2011 and March 2014. *See id; see also* ECF No. 45 at ¶ 19–26. In support of this claim, Laios cites several pieces of evidence. First, he notes the corporate minutes from March 17, 2010 where Laios objected to paying MTM "management fees" of $5,000 per month and Morehouse nonetheless responded that the fees

---

[5] Although not specifically addressed by the parties, any fees paid before October 2010 would appear to be outside the statute of limitations. *See Singer Co., Link Simulation Sys. Civ. V. Baltimore Gas and Elec. Co.*, 558 A.2d 419, 424 (Md. Ct. Spec. App. 1989) (common law contract action shall be filed within three years from the date it accrues under Md. Code, Cts. & Jud. Proc. Article § 5-101) (citations omitted).

4

would be paid. *See* ECF 76-16. Second, he cites an October 19, 2011 email that notes that Laios was "not willing to pay MTM a $5[,]000 per month fee (12 month minimum) on a going forward basis." *See* ECF No. 76-19. Finally, he cites the deposition testimony of Morehouse acknowledging that MTM took $5,000 per month in fees after August 2011, that he did not always seek permission before collecting fees for MTM, and that over a ten-year period he has probably taken "less than $300,000" without express authorization. *See* ECF No. 76-7 at 11; 76-13 at 3. Laios does concede that he authorized a $5,000 management fee effective June 1, 2011 "so long as the 'Oxford contract' is pending." *See* ECF No. 76-16. The 'Oxford contract' terminated, however, on August 2011 and Laios claims that the October 19, 2011 email shows he revoked his approval of the management fee. *See* ECF No. 76-1 at 13 (citing ECF No. 76-19). But MTM continued to take the $5,000 monthly management fee. *See* ECF No. 76-6 at 11. Laios stated that he did not authorized the $5,000 monthly fee until March 2014. *See* ECF No. 76-12. Thus, Laios contends that there is no dispute that MTM breached the Operating Agreement by taking unauthorized fees between, at least, October 2011 and March 2014.

Defendants argue that Laios did approve the $5,000 monthly fee sometime after October 18, 2011. *See* ECF No. 81 at 4. Specifically, Defendants cite Morehouse's deposition testimony where he stated that Laios agreed to continue the "management fee of $5,000" sometime after the termination of the 'Oxford contract' and after October 2011, because Laios "saw the value of moving forward on the project." *See* ECF No. 81-1 at 11–12. He said that Laios' approval was verbal and was heard by several other individuals who were attending the LLC meeting. *See id.* at 12.

After careful examination of the evidence provided, the Court finds that Defendants have shown that there is a genuine dispute over whether the $5,000 per month fee was authorized

during the relevant period. Specifically, Morehouse stated during his deposition that Laios did approve MTM's $5,000 monthly fee after originally denying it in October 2011. To the extent Morehouse admits that MTM took fees without prior approval over a ten-year period, the record is not clear that Morehouse was referring to the $5,000 per month received from 2011-2014.[6] The fees paid without prior approval could have occurred during the relevant period (Oct. 2011– Feb. 2014), they could have all occurred before that time, or they could have related to fees that did not require specific approval,[7] but it is not the Court's prerogative to decide this dispute at the summary judgment stage. Construing all justifiable inferences in Defendants' favor, as the Court is required to do, Defendants have shown that there is a genuine dispute for trial. While Laios believes that it is clear that he did not authorize the $5,000 monthly fee and Morehouse admitted to taking certain fees without prior approval, Defendants have presented evidence that the monthly fee was authorized during the relevant period. The appropriate time to resolve this dispute is at trial, not at summary judgment.

---

[6] Indeed, this appeared to be on Plaintiffs' counsel's mind during the deposition as he asked: "[a]re there particular fees that you typically sought permission for and other fees that you typically would not seek permission for?" *See* ECF No. 76-13 at 3. The answer did not implicate any particular fees. *See id.*

[7] Defendants also argue that, regardless of whether Laios approved the fees, the $5,000 per month was governed by section 5.13 as "development fees for managing the development." *See* ECF No. 81 at 3. As such, Defendants argue, development fees, unlike salary or compensation under section 5.11, do not require majority approval. For support that the fees were for managing the development, Defendants cite to Morehouse's corporate deposition for MTM where he states that the $5,000 was a development fee. *See* ECF No. 81-1 at 3. Morehouse contends that the work MTM does relates to development of the project, including, for example, the creating the site plans, obtaining permits, and deciding what to do with excess fill on the site. *Id.* at 5–7. As explained more fully below, the Court also finds this provision is ambiguous and thus not proper as an issue for summary judgment.

### b. Defendants' Breach of Contract and of Duty of Good Faith Count

Laios also contends that he is entitled to summary judgment on count two of Defendants' counterclaim. *See* ECF No. 76-1 at 17. This count, for breach of contract and of duty of good faith, is the mirror image to Laios' breach of contract claim: Defendants allege that it was Laios who breached the Operating Agreement by trying to stop MTM from receiving compensation. *See* ECF No. 14 at 12–17. As noted above, the Operating Agreement provides for two different avenues for the manager to be paid. Under section 5.11: "The salaries and other compensation of the managers shall be fixed from time to time by an affirmative vote of Members holding at least a majority interest . . ." *See* ECF No. 76-2. Section 5.13 states that "the Manager shall be entitled to development fees for managing the development in whole or in part of the Brightseat Road real property, provided such fees are not excessive and are negotiated in good faith. If the Manager performs services of a general contractor or construction manager, the Manager shall be entitled to the usual and customary fees."

In requesting summary judgment on this count, Laios asserts that there is no evidence that he did "anything to frustrate [MTM's] performance." *See* ECF No. 76-1 at 17–18. Laios argues that there can be no breach in failing to approve fees to MTM because compensation for the manager (MTM) is not required under the Operating Agreement. *See* ECF No. 85 at 4–5. Defendants assert that the Operating Agreement's provisions permit MTM to receive fixed compensation, development fees, and usual and customary fees for acting as the construction manager. *See* ECF No. 81 at 7–9. MTM argues that, even if Laios had discretion under the Operating Agreement to deny MTM compensation, his discretion had to be exercised in good faith. *See id.* To establish a genuine dispute of material fact over whether Laios breached the Operating Agreement, Defendants point to the evidence, as discussed above, showing that Laios

sought to deny MTM any form of compensation. *See id.* at 7. For example, Defendants point to meeting minutes and emails to show that Laios would not agree to lend funds to construct an entryway unless MTM agreed to forgo all compensation and fees. *See id.* at 7–8.

Maryland follows the objective interpretation of contracts. *Walker v. Dep't of Human Res.*, 842 A.2d 53, 61 (2004). Under this interpretation, the court is focused on determining the intent of the parties with the language of the contract being the primary source for identifying this intent. *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir.2005) "The first step for a court asked to grant summary judgment based on a contract's interpretation is . . . to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir.2007) (citing *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir.1993)). If the contract is unambiguous, the Court can interpret the contract as a matter of law. *Id.* If the contract is ambiguous and no extrinsic evidence resolves the ambiguity, summary judgment should be denied. *See Sheridan v. Nationwide Ret. Solutions, Inc.*, 313 F. App'x 615, 619 (4th Cir.2009). "[A] contract is ambiguous if it is susceptible to two reasonable interpretations." *See id.*

In this case, on the one hand, Laios maintains that the compensation provisions of the Operating Agreement unambiguously permitted him to vote against compensation for the manager in his discretion. *See* ECF Nos. 76-1 at 6 & 85 at 4–5. On the other hand, Defendants assert that the Operating Agreement contemplates that the members would approve appropriate fees and that the manager would automatically receive compensation that was negotiated in good faith. Both of these interpretations are reasonable (even if one may be more reasonable than the other). The compensation section uses the words "shall be fixed" but also requires an "affirmative vote." Further, the development fees section provides that the manager "shall be

8

entitled" to development fees but the fees must be "negotiated in good faith." Thus, while Laios maintains that he was, under the Operating Agreement, permitted to simply vote against compensation for the manager, *see* ECF No. 76-1 at 6, the Operating Agreement is not unambiguously in agreement with this interpretation. However, the agreement does not unambiguously express Defendants' interpretation that the members are always required to approve fees. As reasonable minds could differ, the agreement is ambiguous and the Court is left with a dispute of fact over the intent of the parties when drafting this agreement and, depending on how that dispute is resolved, a dispute over whether Laios was justified when he tried to deny MTM compensation. *Cf. Atalla v. Abdul-Baki*, 976 F.2d 189, 195 (4th Cir. 1992) ("Because the parties assert conflicting intentions on the basis of the same language, which supports both interpretations, it is our opinion that the contract is ambiguous and that the question of intent raises a genuine issue of material fact, rendering summary judgment inappropriate.").

Even if the Operating Agreement was unambiguously in line with Laios' interpretation that he had complete discretion over whether to approve compensation to MTM, Defendants' breach of contract count is based on the implied covenant of good faith and fair dealing that is present in every contract. The duty to act in good faith "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing its obligations under the contract." *Eastern Shore Mrkts, Inc. v. J.D. Assocs. Lts. Partnership*, 213 F.3d 175, 182-83 (4th Cir. 2000). If a party has discretion in a contract, the discretion must be exercised in good faith. *Clancy v. King*, 954 A.2d 1092, 1108 (Md. 2008). While Laios asserts that he was justified in authorizing monthly fees in some circumstances and denying authorization in others, *see* ECF No. 85 at 5, Defendants argue that Laios' efforts to prevent MTM from being paid for its work as manager were not exercised in good faith. *See* ECF No. 81 at 7. The existence of these

9

competing interpretations of Laios' actions creates a dispute of fact. A reasonable jury could determine that the Operating Agreement provided that the members should approve *appropriate* compensation for the manager, and if Defendants are believed that compensation was appropriate during the relevant period, that Laios tried to unnecessarily thwart that provision and prevent the manager from obtaining any compensation. Thus, this issue is also one for trial and not summary judgment.

## IV.   CONCLUSION

Both counts raised by Laios involve disputed issues of material fact and the motion for partial summary judgment, ECF No. 76, is DENIED.

A separate order shall follow.

Dated: June 19, 2015

George J. Hazel
United States District Judge